Carla Ann WORRING *v.* STATE of Arkansas

CA CR 82-35                                              638 S.W.2d 678

Court of Appeals of Arkansas
Opinion delivered September 1, 1982
[Rehearing denied September 29, 1982.]

*William C. McArthur,* for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

JAMES R. COOPER, Judge. This is the second appeal involving this appellant. In the first case, *Worring* v. *State*, 2 Ark. App. 27, 616 S.W.2d 23 (1981), we reversed appellant's conviction for manslaughter and remanded the case for a new trial. After the retrial, appellant was convicted again of manslaughter and sentenced to two years in the Arkansas Department of Corrections. From that decision, comes this appeal.

## THE FACTS

Appellant's husband was killed by a single gunshot fired from a weapon which was in the possession of appellant. Appellant had followed her husband's truck to a darkened area behind a truck terminal in Stuttgart, Arkansas. Appellant found her husband seated in a parked automobile with Diane Moritz. There was some conversation between appellant and her husband, and the confrontation ended with the appellant's husband being shot. He died a short time later at a local hospital. On this appeal, appellant raises several grounds for reversal.

## THE PRIOR RECORDED TESTIMONY

Diane Moritz, the individual with whom the deceased was sitting at the time he was shot, testified at the first trial concerning the events which led to the shooting. After the second trial had begun, the trial court was informed that Ms. Moritz was reluctant to testify. She was some four or five months pregnant, and feared for the safety of her baby if she was required to testify. A letter from her obstetrician, Dr. Maxwell R. Baldwin, was introduced as court exhibit 1. The letter states:

September 22, 1981

Re: Diane Moritz

TO WHOM IT MAY CONCERN:

Mrs. Diane Moritz is a maternity patient of mine.

She is now about 18 weeks pregnant. I examined her in my office yesterday. Diane's pregnancy is currently progressing satisfactorily. Diane was herself emotionally greatly distressed concerning her testifying in an upcoming trial.

Although there is no way that I can assert that Diane's participation would definitely harm her pregnancy, I am concerned lest any unnecessary risks be taken. Unless her personal testimony is absolutely essential, my professional opinion is that her court appearance does represent a considerable hazard to her health and her pregnancy.

I am not recommending that Diane be excused from a court appearance for frivolous reasons. However, I understand that because of previous recorded testimony, her testifying again may not be essential. If this be so, then excusing Diane from a court appearance seems the safer approach at this time.

Sincerely,
/s/ Maxwell R. Baldwin
Maxwell R. Baldwin, M.D.
[T. 387]

The trial court interviewed Ms. Moritz, outside the hearing of the jury, and she stated to the court that she believed testifying might make her lose her baby. She also indicated that she could not take the nerve medication that her physician had given her prior to her testifying in the first trial. After the hearing, the trial court noted appellant's objection to the use of prior recorded testimony. Appellant objected on the basis that the charge in the case at bar was different from the charge in the original case, and that the elements and methods of defending against the charge were different. The court stated:

Now it certainly might be that some of her testimony in view of the reduced charge that she's being tried on now

may or may not be relevant or material to this charge and for that reason you might or the State might want to exclude certain parts of it. But the testimony is going to remain the same. [T. 384]

The court also noted Ms. Moritz's condition during the hearing and stated:

You will all agree that with the exception of some brief moments she was steadily crying and she is obviously very emotionally upset to the point of I think being sick right now if the sounds I hear coming from . . .

By Mr. Brown: Yes, sir, I would have to agree.

BY THE COURT: I believe the lady is now sick in the court's chambers. I don't know if reliving that night would endanger her health or her unborn child's health but I for one am not willing to take that chance. It may not but then again, it might. And I'm going to go back there and talk to her but my inclination is at this point that I'm going to declare that she's not available in the sense that we can use her prior recorded testimony. [T. 384, 385]

The next morning, September 24, 1981, at 8:30 a.m., the court again spoke with Ms. Moritz. The court stated to counsel:

When I visited with her Mrs. Moritz was still extremely emotionally upset to the point of being almost hysterical. She had become very ill and had become very sick at her stomach. After talking with her for about fifteen minutes I became quite satisfied that she would in all likelihood fall to pieces on the witness stand. She never was able to gain her composure in the court's chambers. And in her pregnant condition the court was not going to take the risk of having any court appearance interfere with her pregnancy and I did excuse her from the subpoena that the State had issued and find that she is for all practical purposes not available to testify in the trial of this case and the State will be permitted to read

to the jury the transcript of her testimony at the first
trial. . . . [T. 391, 392]

Further, the court inquired of counsel as to whether they had
reviewed Ms. Moritz's earlier testimony. Counsel indicated
that they had, and that portions of it, alleged to be irrelevant
to the current proceedings, were stricken.

The Uniform Rules of Evidence, Rule 804, Ark. Stat.
Ann. § 28-1001 (Repl. 1979), provides, in pertinent part, as
follows:

Rule 804. Hearsay Exceptions — Declarant Unavail-
able. — (a) Definition of Unavailability. "Unavailabil-
ity as a witness" includes situations in which the
declarant:
  * * *
(4) Is unable to be present or to testify at the hearing
because of death or then existing physical or mental
illness or infirmity; or . . .
(b) Hearsay Exceptions. The following are not ex-
cluded by the hearsay rule if the declarant is unavail-
able as a witness:
(1) Former testimony. Testimony given as a witness at
another hearing of the same or a different proceeding,
or in a deposition taken in compliance with law in the
course of the same or another proceeding, if the party
against whom the testimony is now offered, or, in a
civil action or proceeding a predecessor in interest, had
an opportunity and similar motive to develop the
testimony by direct, cross, or re-direct examination.

The burden of proving the unavailability of the witness is on
the party who offers the prior testimony. *Looper* v. *State,* 270
Ark. 376, 605 S.W.2d 490 (Ark. App. 1980); *United States* v.
*Amaya,* 533 F.2d 188 (5th Cir. 1976). On appeal, the test is
whether the trial court abused his discretion in determining
that the witness was unavailable. *Satterfield* v. *State,* 248
Ark. 395, 451 S.W.2d 730 (1970); *United States* v. *Amaya,*
*supra.*

In *United States* v. *Myers,* 626 F.2d 365 (4th Cir. 1980),

the United States Court of Appeals, Fourth Circuit stated:

> During trial, a government witness, who was pregnant, refused to testify because she was afraid. The court correctly ruled that she had waived her fifth amendment rights by testifying before a grand jury, but then, expressing concern over her condition, the court excused the witness and admitted her grand jury testimony. Under the circumstances, we find no reversible error in this ruling. On retrial, however, if she persists in her refusal, the court should not hesitate to use its contempt power in an effort to elicit her testimony so that she may be cross-examined.

In *Peterson* v. *United States,* 344 F.2d 419 (5th Cir. 1965), the United States Court of Appeals, Fifth Circuit dealt with a situation where the defendant was being retried on income tax evasion. Mrs. Helen Flora was the head bookkeeper. She had been present and testified at two earlier trials. She was unavailable for the third trial because of pregnancy and attendant complications. Her physician testified that her pregnancy was not normal and that she was unable to travel to the location of the trial without extreme risk to herself and her unborn baby. The appellate court held that Mrs. Flora's prior testimony should not have been used to establish a conspiracy, because that was not an issue which had been presented on the two former trials, and therefore, her testimony was not tested by cross-examination on that issue. Further, one major difference in *Peterson* and the case at bar is that in *Peterson* the trial had not yet begun. The appellate court pointed out that a request for a continuance should have been made.

In *Phillips* v. *Wyrick,* 558 F.2d 489 (8th Cir. 1977), *cert. denied,* 434 U.S. 1088, 98 S. Ct. 1283, 55 L.Ed.2d 793 (1978), the court pointed out that admitting prior testimony of a witness did not violate the confrontation requirement where the witness was unavailable at trial, the testimony was given at a previous judicial proceeding against the same defendant, and the defendant had an opportunity to cross-examine the witnesses. The court referred to *California* v.

*Green,* 399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970), and noted that:

> The factors set forth as determinative were that at the preliminary hearing the witness was under oath; the defendant was represented by counsel, the same counsel, in fact, who later represented him at trial; the defendant had every opportunity to cross-examine the witness as to his statements; and the proceeding was conducted before a judicial tribunal equipped to provide a record of the hearing.

In the case at bar, the primary issue is whether the testimony of Ms. Moritz was sought and "unavailable" and not whether she was physically present in court. *Barber* v. *Page,* 390 U.S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968); *Mason* v. *United States,* 408 F.2d 903 (10th Cir. 1969), *cert. denied,* 400 U.S. 993, 91 S. Ct. 462, 27 L.Ed.2d 441 (1971).

On these facts, we hold that the trial court correctly ruled that the witness, Diane Moritz, was "unavailable", and that, therefore, under Rule 804, her prior recorded testimony was admissible.

## CLOSING ARGUMENTS

Appellant argues that the trial court erred in allowing the prosecuting attorney to argue outside of the record and to use inflammatory argument. We have examined the record and find that counsel refers to four occasions on which he alleges the court erred. In each of those instances, the trial court either sustained counsel's objection or admonished the jury.

The trial court has broad discretion in controlling, supervising, and determining the propriety of arguments of counsel and its rulings in that regard will not be reversed on appeal in the absence of gross abuse. *McCroskey* v. *State,* 271 Ark. 207, 608 S.W.2d 7 (1980); *Price* v. *State,* 268 Ark. 535, 597 S.W.2d 598 (1980).

We find no abuse of discretion on the part of the trial court, and therefore we find this argument to be without merit.

## SUFFICIENCY OF THE EVIDENCE

Appellant alleges that the evidence was insufficient to justify her conviction. Arkansas Statutes Annotated § 41-1504 (Repl. 1977), provides in pertinent part, as follows:

Manslaughter — (1) A person commits manslaughter if:
(a) he causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be;

\* \* \*

(c) he recklessly causes the death of another person; . . .

In this case, the State elicited testimony which indicated that appellant observed her husband sitting in an automobile behind a truck terminal with another woman. She removed a .22 caliber pistol from under the seat of her car and walked up to the automobile in which her husband was seated. There is a conflict in the testimony as to whether appellant actually threatened her husband, but as a result of the confrontation he was shot once and died shortly thereafter.

There was ample evidence from which the jury could find that appellant either recklessly caused her husband's death, or that she caused his death under extreme emotional disturbance. There was evidence in the form of testimony by Dr. Malak, the State Medical Examiner, which might have supported a finding by the jury that the gun discharged because the deceased grabbed it. Even if that fact had been

conclusively proven, the jury still could have convicted appellant by finding that her actions were reckless and that she did cause her husband's death by virtue of those actions.

In criminal cases, we affirm where there is substantial evidence to support the verdict. *Lunon* v. *State,* 264 Ark. 188, 569 S.W.2d 663 (1978); *Pope* v. *State,* 262 Ark. 476, 557 S.W.2d 887 (1977). In determining whether the evidence is substantial, we review the evidence in the light most favorable to the appellee. *Chaviers* v. *State,* 267 Ark. 6, 588 S.W.2d 434 (1979); *Pope* v. *State, supra.* Substantial evidence has been defined as evidence which is:

> of sufficient force and character that it will with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture. *Jones* v. *State,* 269 Ark. 119, 598 S.W.2d 748 (1980).

We find the evidence sufficient to sustain the conviction, and, having found no merit to the other points raised by appellant, we affirm.

Affirmed.