Larry BURNETT and Brenda BURNETT *v.* STATE of
Arkansas

CR 85-44

697 S.W.2d 95

Supreme Court of Arkansas
Opinion delivered October 14, 1985

*Fuchs, Villines & Vammen*, by: *M. Watson Villines II*, for appellants.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Larry and Brenda Burnett were convicted of the first degree murder of their thirteen month old infant, Larry Burnett, Jr. The jury recommended life without parole, but the court reduced the sentence to life imprisonment, the maximum legal sentence. The state's case was based primarily on medical testimony that the child suffered abuse over a period of weeks or months and sustained numerous injuries, eventually dying from a blow to the abdomen. The defense was a denial of abuse by the parents and other witnesses, with evidence that the child had been sickly from birth, the baby had recently had a hernia operation, and any injuries were caused by the child falling or other normal childhood activities. The appellants make eleven assertions of error. We find no prejudicial error and affirm the convictions.

The medical testimony of abuse is overwhelming. Dr. Donna L. Brown, the assistant state medical examiner, who performed the autopsy, said that overall the child was smaller in size than she expected a 13 month old to be; he appeared very skinny with a

very large abdomen which was tight like a drum; there were at least 15 bruises on the face and 30 bruises on the upper and lower extremities; some of these were a few days old and others were a few weeks old; the child's skin was paper thin, with practically no fat present which would accentuate the bruises; the child was malnourished and dehydrated; the nose was flattened and almost cauliflower in shape; inside the child's mouth were extensive tears between the lips and gums; both eyes were sunken with bruises around the right eye; there were scratches on the back of the head and back of the right lower leg; there was extensive bruising and swelling of the left foot; and the hands were scratched on the inside and bruised on the top. These were the external injuries.

Upon opening the child's body, the doctor found four broken ribs, which had been broken within the last few days; multiple areas of the large and small bowels were in various stages of the healing process; there was a tear in the small bowel about an inch long; and the right kidney was bruised.

Dr. Brown testified about the cause of the injuries. She discounted the appellants' explanation for the injuries. The bruises on the child's face and head were the kind caused by pinching, knuckling or thumping a child; the tears inside the mouth are characteristically caused by blows to the mouth with a fist, not the kind of injuries caused by falling, because there would have been bruises on the outside of the mouth. The scratches on the back of the head, on the back of the right lower leg and on the hands were most likely caused by fingernails. The numerous "insults" to the abdomen and bowels are injuries caused by a punch or punches to the abdomen with a fist.

The ultimate cause of death was an impact injury to the abdomen, rupturing the colon, which caused the child to go into shock due to the loss of body fluids. Peritonitis also developed. Dr. Brown testified that the tear in the colon was caused by a quick force being applied, like a blow from a fist; this type of injury could not be sustained by a child falling down and hitting an object, and it was not a result of a hernia operation. Photographs of the child were introduced which graphically corroborated the doctor's testimony. Death occurred about 8 p.m., May 11, 1984. The lethal blow or blows occurred from twelve to three hours prior to death.

The state offered evidence that the child was in the custody of one or both parents that day. The father, Larry Burnett, left for work about 7 or 7:30 a.m., and the child remained with the mother, Brenda Burnett, the remainder of the day. About 6:30 that evening she noticed Larry, Jr., was having convulsions. She took the baby to a neighbor, who gave them a ride to the farm where Mr. Burnett worked. Mrs. Burnett said she kept patting the child and became alarmed when the baby's eyes glazed over. She also testified that when they arrived at the farm she attempted cardiopulmonary resuscitation on the child until her husband arrived. An ambulance was called and the child was taken to Baptist Medical Center where he was declared dead.

■ On appeal we look to see if there is substantial evidence to support the jury's finding. While there was no direct evidence that these parents rendered the lethal blow which caused the child's death, there is strong circumstantial evidence to support that conclusion. Indeed, the evidence of abuse is overwhelming. The jury could have found that the lethal blow occurred on the morning of May 11 when both parents were with the child. The evidence supports the conclusion that both parents could not have been ignorant of the abuse. They each had a duty to prevent such injury. *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984); *Limber* v. *State*, 264 Ark. 479, 572 S.W.2d 402 (1978); *Deviny* v. *State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985). In these cases we and the court of appeals affirmed both parents' liability for the death of their child when caused by a single blow to the abdomen. The difference in these cases is the parents were convicted of second degree murder; the convictions here are for first degree murder.

■■ We find sufficient circumstantial evidence that these parents were equally guilty of causing the death of the child with the premeditation and deliberation required to support a conviction for first degree murder. Ark. Stat. Ann. § 41-1502 (Repl. 1977). Premeditation, deliberation and intent may be inferred from the circumstances of the case, such as the weapon used and the nature, extent and location of the wounds inflicted. *Stout* v. *State*, 263 Ark. 355, 565 S.W.2d 23 (1978). According to the medical examiner, the weapon used was a fist which struck the abdomen with such force as to rupture the colon. The child sustained fingernail scratches, four broken ribs, and other inter-

nal damage as well as numerous bruises due to blows with a fist over all his body. The required mental state for first degree murder can be inferred from the evidence of abuse, which is substantial.

■■ The appellants asked for a bill of particulars and the court denied the request. The information alleged that the appellants killed the infant by "starvation, beating and other forms of abuse." *See Mayer* v. *State*, 285 Ark. 73, 685 S.W.2d 143 (1985). The purpose of a bill of particulars is to inform a defendant of the charge in sufficient detail to prepare a defense. Ark. Stat. Ann. § 43-804 (Repl. 1977). The trial court, using discretion, can grant or deny the request. *Silas* v. *State*, 232 Ark. 248, 337 S.W.2d 644 (1960). The appellants showed no surprise or prejudice, and we find no abuse of discretion by the trial court. *Parker* v. *State*, 265 Ark. 315, 578 S.W.2d 206 (1979).

■ The appellants requested a sequestered jury subject to individual voir dire examination. The trial court denied the request. Instead, the court called a panel of 12 jurors allowing counsel to question twelve at a time, and then strike from the panel for cause or peremptorily. Sequestration is a discretionary matter with the trial judge, just as individual voir dire is discretionary. *Heffernan* v. *State*, 278 Ark. 325, 645 S.W.2d 666 (1983); A.R.Cr.P. Rule 32.2.

■ The appellants also argue they were denied a fair trial because of pretrial publicity. Cited as evidence of prejudice is the jury's recommendation of life without parole—an excessive sentence since life is the maximum authorized. The appellants have failed to meet their burden of showing that prejudice due to pretrial publicity was community-wide, depriving them of a fair trial. *Swindler* v. *State*, 267 Ark. 418, 592 S.W.2d 91 (1979). The jury's stern recommendation could easily be the result of over-whelming evidence instead of the pretrial publicity. There was no evidence that any pretrial publicity caused this reaction.

■ Furthermore, to challenge the jury, the appellants must show that a seated juror was biased against them due to the pretrial publicity. In order to do this, the appellants must have exhausted their peremptory challenges and be forced to accept a juror they did not want. *Orsini* v. *State*, 281 Ark. 349, 665 S.W.2d 245 (1984). This the appellants have not done. They exercised

only two peremptory challenges. Most of the pretrial publicity complained of occurred in May, 1984; the trial occurred in October, 1984. The jurors were questioned individually about the effect of the publicity, and each juror was admonished to refrain from discussing the case or listening to news reports about the case.

While some jurors indicated they had read or heard about the case, all that were seated said they could set aside any knowledge they had and give the appellants a fair trial. It is not required that jurors be totally ignorant of the facts involved in a case. *Swindler* v. *State, supra.* Using these standards, we can find no evidence from the record that the appellants did not receive a fair trial.

Charles Castleberry, the sheriff of Faulkner County, released photographs of the naked, battered body of the victim to KTHV news. These pictures were shown on the news broadcast of the television station during the 6 and 10 p.m. newscasts on May 16 and 17. Faulkner County is in the station's broadcast range. The appellants argue that this release by the sheriff and the showing of the photographs were prejudicial error. While it was unprofessional for the sheriff to release this evidence, the issue is whether the pretrial publicity, including the airing of the photographs, deprived these appellants of a fair trial. We find no evidence it did.

Appellants moved for a mistrial after a police officer, who took Larry Burnett from the hospital to the police station, testified about a conversation with Burnett. He said that Burnett talked about the police car, the size of its engine, and mentioned that he had been in a "tough-man contest" in which he broke the jaw of a disc jockey. The trial judge denied the motion for a mistrial, and in response to the request to admonish the jury, the judge stated, "Not at this time." However, the trial court did state that he did not see the relevance of the testimony.

Appellants now assert two arguments as basis for a mistrial. First, the appellants argue that the state was attempting to use the evidence to show the state-of-mind of Larry Burnett and his lack of remorse. The appellants contend that the state-of-mind after the crime is not admissible under *Graham* v. *State*, 2 Ark. App. 266, 621 S.W.2d 4 (1981); and that the state

improperly introduced the character of Larry Burnett by showing he was violent. See Unif. R. Evid. Rule 404 (b). These statements were not inadmissible evidence of a crime or an illegal act under Rule 404 (b). Arguably, it could have been considered as some evidence that Larry Burnett was predisposed to violence, but it did not directly show that he had such a character trait nor demonstrate in any way he would be violent towards his own children. A mistrial is a drastic remedy used only when error is so prejudicial that it cannot be cured by admonition. *Limber* v. *State, supra.* The appellants have at most suffered a harmless error. The statement about the "tough-man contest" was essentially irrelevant and, while the court technically should have admonished the jury, failure to do so was not prejudicial error. This court will not reverse a judgment for an error which is unaccompanied by prejudice. *Berna* v. *State,* 282 Ark. 563, 670 S.W.2d 435 (1984).

The trial court denied a motion to sever the trials of the appellants. Such a decision will only be reversed if there is an abuse of discretion. *McDaniel* v. *State,* 278 Ark. 631, 648 S.W.2d 57 (1983). In *Spears* v. *State,* 280 Ark. 577, 660 S.W.2d 913 (1983), we explained the circumstances under which a motion to sever should be granted:

> 1) where defenses are antagonistic; 2) where it is difficult to segregate the evidence; 3) where there is a lack of substantial evidence implicating one defendant except for the accusation of the other defendant; 4) where one defendant could have deprived the other of all peremptory challenges; 5) where if one defendant chooses to testify the other is compelled to do so; 6) where one defendant has no prior criminal record and the other has; 7) where circumstantial evidence against one defendant appears stronger than against the other.

Applying these factors to the appellants: 1) Their defenses were not antagonistic since both claimed the injuries were due to a fall and surgery; that even if the child were beaten, they did not do it. At one point the appellants' attorney did suggest that since the mother was the principal caretaker, she was more responsible, but evidence was brought out that the father could have been at home when the fatal blow was struck. Both appellants also assert that

since the cause of death was one single injury, two people could not have rendered the blow. 2) The evidence was identical as to both appellants. 3) Neither appellant accused the other of beating the child. 4) The record does not show who exercised the two peremptory challenges. 5) Both appellants testified. 6) Neither appellant had a prior criminal record. 7) There is circumstantial evidence against both appellants. The motion was properly denied.

 Appellants sought a change of venue due to the pretrial publicity. A change of venue is granted when it appears "that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein." Ark. Stat. Ann. § 43-1501 (Repl. 1977). The trial court has discretion in granting this motion. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982). If it is determined the defendant can receive a fair trial by an impartial jury in the county in which he is being tried, then the motion will be denied. *Orsini* v. *State, supra.* In examining the record, the jurors responded that either they had not formed an opinion or they could set it aside; the jurors could give the appellants a fair trial based on the evidence and the court's instructions. Thus, there is no abuse of discretion. *Perry* v. *State, supra.*

 Graphic photographs of the body of Larry Burnett, Jr., were admitted over the appellants' objection. We have in numerous cases upheld the admission of photographs of the victim that are considered gruesome. Some crimes are gruesome. It is discretionary to permit such evidence if it is useful in aiding the jury to understand the testimony by showing the nature and location of the wounds. *Perry* v. *State*, 255 Ark. 378, 800 S.W.2d 387 (1973). In this case the photographs were obviously a strong part of the state's direct evidence, and we find no abuse of discretion by the trial court.

 Under Ark. Stat. Ann. § 43-2725 (Repl. 1977), as put into effect by our Rule 11 (f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

Affirmed.

PURTLE, J., not participating.