David INGLE *v.* STATE of Arkansas

CR 87-164                                          742 S.W.2d 939

Supreme Court of Arkansas
Opinion delivered January 25, 1988

*Gibson & Deen*, by: *Thomas D. Deen*, for appellant.

*Steve Clark*, Att'y Gen., by: *C. Kent Jolliff*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant entered guilty pleas to three felonies, was sentenced in each case, and began serving the sentences. He then filed a petition for post-conviction relief pursuant to A.R.Cr.P. Rule 37 alleging constitutionally inadequate representation because of his attorney's conflict of interest in representing codefendants. The trial court denied post-conviction relief. We reverse and remand.

It is settled that "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees

354

of effective assistance of counsel." *Holloway* v. *Arkansas*, 435 U.S. 475, 482 (1978). In many cases, " '[a] common defense . . . gives strength against a common attack.' " *Id.* at 482-83 (quoting *Glasser* v. *United States*, 315 U.S. 60, 92 (1942) (Frankfurter, J., dissenting)). However, appointing or permitting a single attorney to represent codefendants does create a possible conflict of interest that could prejudice either or both clients. *See Burger* v. *Kemp*, ___ U.S. ___, 107 S. Ct. 3114, 3120 (1987). The possibility of prejudice does not justify "an inflexible rule that would presume prejudice in all cases." *Id.* Instead, prejudice is presumed " 'only if the defendant demonstrates that counsel "actively represented conflicting interests" and "an actual conflict of interest adversely affected his lawyer's performance." ' " *Id.* (quoting *Strickland* v. *Washington*, 466 U.S. 668, 692 (1984) (quoting *Cuyler* v. *Sullivan*, 446 U.S. 335, 348, 350 (1980) (footnote omitted))). Thus, the inquiry in the case at bar is whether counsel actively represented conflicting interests and, if so, did that conflict adversely affect the lawyer's performance.

The facts are as follows. On November 21, 1985, the police searched a house in Star City occupied by appellant and codefendant Audrey Courtney, and also searched Mrs. Courtney's car, located at the residence. The police seized fifteen pounds of marijuana from the house and car. Four days later, on November 25, appellant and codefendant Courtney were jointly charged with possession of a controlled substance. Ark. Stat. Ann. § 82-2617 (Supp. 1985). Because of the amount of marijuana seized, the information was amended to possession of a controlled substance with intent to deliver. On December 20, appellant and codefendant Courtney employed Robert Remet as their attorney. Remet filed various defense motions and prepared for trial. The deputy prosecuting attorney offered to recommend a term of nine years each for the appellant and codefendant if they would plead guilty. Their attorney wrote back, "Would you consider reducing the state's offer to 6 years for each defendant?" Appellant and the codefendant subsequently rejected the State's offer.

On June 8, 1986, the police searched appellant's pickup truck and seized another three and one-half pounds of marijuana and, in addition, seized the truck for forfeiture. The next day, June 9, appellant was charged with two additional felonies, one for the manufacture and possession of a controlled substance and

the other for possession of a controlled substance with intent to deliver.

Three days later his attorney wrote the deputy prosecutor about the second set of charges against appellant, and also inquired about the first charge against appellant and his co-defendant:

> Needless to say, my client's subsequent, alleged drug related offense has nonplussed his poor lawyer. . .

> Talk about out of the frying pan and into the fire!

> The previous case, LCR 85-94-2 (State v. David Ingle and Audrey Courtney) is set for trial on September 23, 1986.

> Please think about a *new* plea offer for Mr. Ingle, present developments duly considered. And, while you're at it, may I, once again, ask for some clemency for Mrs. Courtney—who, if hindsight be any guide, was probably not in pari delicto in the earlier case (CR85-94-2)?

> The state's statutory entitlement to retribution, insofar as Mrs. Courtney be concerned, will not suffer if she is placed on 5-years' supervised probation, and required to pay an appropriate fine. In fact, in view of the latter case against Mr. Ingle, such an arrangement would not be unreasonable.

On June 20, in the codefendant's case, the State offered to recommend five years on probation and a fine of $3,000.00. The codefendant accepted the plea on June 24. On the same day, June 24, the deputy prosecutor mailed a plea offer for appellant. The offer was for five years on the first charge and ten years on each of the second charges filed June 9, the latter two sentences to be concurrent to one another but consecutive to the five year sentence. In addition, the bargain called for forfeiture of the truck. The appellant accepted the plea offer on June 25 and was sentenced on July 1. On that same day, July 1, appellant's attorney wrote the deputy prosecutor:

> That 1985 Ford Ranger pick-up, *formerly* the property of David Ingle, is subject to a lien of about $3000 or so with Ford Motor Credit Co., as well as to an indirect lien of

over $3500, running in favor of Audrey Courtney.

> Since (1) the confiscation is subordinate to secured liens; and (2) Mrs. Courtney did in fact put up the cash for the downpayment ($3500), as well as make the monthly payments; and (3) Mrs. Courtney was not involved in 86-34-2, which is the case at issue (the confiscation), what are your thoughts about titling the truck in her, and having her go ahead and continue the payments?

> If, for one moment, I believed Courtney to be in pari delicto with Ingle, period, I would not ask for you to consider ceding the truck to her.

> Punishment and retribution have now been exacted: he gets the pen, she gets a healthy fine and probation. Plus, he has lost his truck. Fair is fair, wouldn't you say. . .?

The foregoing facts show that at first, when appellant and the codefendant had equal charges pending, their attorney devoted his full loyalty to both clients and sought a six year sentence for each of them. However, when the second set of charges was filed against appellant, a disparity of charges between the clients came into existence. When a substantial disparity of evidence or of charges exists, it is unusual if an actual conflict does not also exist. *Armstrong* v. *People*, 701 P.2d 17, 22 (Colo. 1985); *see also Boyette* v. *State*, 290 Ark. 43, 716 S.W.2d 749 (1986). The attorney reacted to the disparity of charges by changing his plea bargaining from a position of complete loyalty to both clients to one of comparing his clients' culpability, even on the first charge: "Courtney . . . if hindsight be any guide, was probably not in pari delicto in the earlier case. . . ." At this time the attorney was in the middle of conflicting interests. The conflict is even more clear in his subsequent letter: "Punishment and retribution have now been exacted: he gets the pen, she gets a healthy fine and probation. Plus, he has lost his truck. Fair is fair, wouldn't you say. . .?"

The facts conclusively establish that the attorney was playing one client against the other, which constitutes a clear conflict of interest. The facts also conclusively establish that, after getting in the middle of the conflicting interests, the attorney's performance was adversely affected because he no

longer had complete loyalty to appellant. He virtually abandoned appellant in order to get a better offer for the codefendant. Accordingly, we hold that appellant had constitutionally inadequate representation at the time he pleaded guilty.

Reversed and remanded.