Adam Troy FORD and King David McNichols v. STATE of Arkansas

CR 87-206                                     753 S.W.2d 258

Supreme Court of Arkansas
Opinion delivered June 13, 1988
[Rehearing denied July 5, 1988.*]

---

*Purtle, J., would grant rehearing.

*Charles E. Ellis*, Deputy Public Defender, for appellants.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Appellants Adam Troy Ford and King David McNichols were each charged with burglary and theft. They were represented by the same appointed counsel and tried jointly. Each was convicted of the offenses charged. McNichols was sentenced as an habitual offender to fifty years imprisonment while Ford was sentenced to thirty years.

Appellants argue that the court erred in: (1) refusing to grant a severance and appoint separate attorneys; (2) failing to grant a mistrial when, on cross-examination by the State, Ford

alluded to McNichols' prior imprisonment; (3) excluding extrinsic evidence of a prior inconsistent statement by a State's witness; (4) allowing the testimony of a surprise "rebuttal" witness; (5) allowing the State's improper exercise of peremptory challenges striking several potential jurors of appellants' race; (6) allowing certain hearsay testimony; (7) refusing to instruct on the accomplice status of several of the State's witnesses; and (8) failing to grant a directed verdict as there was insufficient evidence corroborating the accomplice testimony. We find no error and affirm.

At trial, McNichols' sixteen-year-old nephew testified that on March 27, 1987, he, his uncle, and Ford broke into the Cross Town Liquor Store in Blytheville, Arkansas. The nephew testified that the group took beer, cartons of cigarettes, and several boxes containing liquor. Other testimony indicated that a gun was also taken. Appellant McNichols had been staying at the residence of Jo Ann and Johnny Wyllis. Jo Ann testified on behalf of the State that on the morning following the burglary she awoke to find McNichols, appellant Ford and McNichols' nephew, together with liquor and cigarettes, in her house. She stated that she did not know where the liquor came from, that she thought it may have been stolen, but she did not know. In any event, she asked the three parties to help her put it in the car so that she could take it away from the house. Jo Ann drove the appellants McNichols and Ford, McNichols' nephew, Johnny Wyllis, and another party to a tavern, Fat Daddy's, where McNichols sold portions of the stolen liquor to the tavern owner, William Harvey. Jo Ann's testimony was corroborated to some extent by Johnny Wyllis.

On the morning following the burglary, officers were observing the activities surrounding the Wyllis vehicle and Fat Daddy's tavern. They later stopped the Wyllis vehicle after it left the tavern with its six occupants. The officers were given consent to search the vehicle and recovered a gun, cartons of cigarettes, and bottles of liquor. Other bottles of liquor, empty beer bottles, and empty beer cartons were found at the Wyllis home.

At trial, the owner of the Cross Town Liquor Store identified several boxes of liquor seized from Fat Daddy's tavern as those stolen from his store. He also identified other items of evidence that had been seized—including his gun. The owner of Fat Daddy's testified that the boxes of liquor identified earlier were

those purchased from McNichols.

Appellant Ford testified that he was at Fat Daddy's when the others arrived and that he merely obtained a ride from them when they left. Ford claimed he had no knowledge of the burglary and had been with a friend, Betty Lark, at the time the burglary was to have taken place. Betty Lark agreed. Her testimony was corroborated by another witness. At some point in the trial, Sharon McNichols informed the prosecutor that she had listened to the testimony of Betty Lark and that it was a fabrication as she had been with Betty Lark at the time Lark claimed to have been with Ford. Sharon McNichols was allowed to testify to that effect as a rebuttal witness for the State over objection by appellants. Appellant McNichols did not testify.

## I. SEVERANCE AND SEPARATE ATTORNEYS

Before trial, appellants' court-appointed counsel filed a motion for severance based upon the possibility of a conflict of interest due to his inability to engage in meaningful communication with McNichols and because McNichols had a more extensive felony record than Ford. Appellants' counsel also asked that separate attorneys be appointed because he felt that in his representation of one appellant he would be required to "point a finger at the other." Additionally, appellant McNichols informed the court that he did not want counsel of record to represent him. On the other hand, both appellants informed the court that they *did not* want a separate trial. The court denied the motions to sever and for separate attorneys.

At trial, appellants' counsel repeated his motion for a severance when, on cross-examination of Ford by the State, it was revealed that Ford and McNichols met while in the "joint." Appellants argue this supported the motion to sever in that counsel was hampered in his protection of McNichols for fear of lessening Ford's credibility as a witness. At the close of trial, Ford indicated that he wanted to call McNichols as a witness to testify that Ford had nothing to do with the burglary. Despite assurances from the court that the State would not be permitted to cross-examine as to prior convictions, McNichols would not testify. Appellants' counsel indicated that this situation could have been avoided had separate attorneys been appointed, and he now had conflicting obligations in his advice to each appellant.

■■ The trial court's decision denying a motion to sever will not be disturbed unless this court finds that there has been an abuse of discretion. *Holloway* v. *State*, 293 Ark. 438, 738 S.W.2d 796 (1987); *Wilkins* v. *State*, 292 Ark. 596, 731 S.W.2d 775 (1987); *Burnett* v. *State*, 287 Ark. 158, 697 S.W.2d 95 (1985). In determining whether or not a severance should be granted, the factors to be considered include: (1) whether the defenses are antagonistic; (2) whether it is difficult to segregate the evidence; (3) whether there is a lack of substantial evidence implicating one defendant except for the accusation of the other; (4) whether one defendant deprived the other of peremptory challenges; (5) whether one defendant felt compelled to testify because the other chose to do so; (6) whether one defendant had a criminal record while the other did not; and (7) whether the evidence against one defendant was stronger than the evidence against the other. *Wilkins, supra; Burnett, supra; McDaniel & Gookin* v. *State*, 278 Ark. 631, 648 S.W.2d 57 (1983).

■ In the case at bar, only the sixth and seventh factors are implicated. Both Ford and McNichols had prior convictions. While McNichols' record may have been more extensive, that fact does not by itself warrant our finding an abuse of discretion. In light of the testimony of Jo Ann Wyllis and McNichols' nephew, the evidence against McNichols by no means so outweighed that against Ford as to warrant a severance; nor does the record reflect that either defendant ended up accusing the other. As to the statement on cross by Ford that he met McNichols in the "joint," Ford had already testified to that effect on direct in response to defense counsel's inquiry as to whether Ford knew McNichols. Neither appellant wanted to be tried separately, and McNichols' failure to testify in Ford's behalf would not necessarily have been remedied by a severance. Taken as a whole, we simply cannot conclude that the trial court erred in denying the motion to sever.

■ On the related point of separate attorneys, it is settled that requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel. *Holloway* v. *Arkansas*, 435 U.S. 475 (1978); *Ingle* v. *State*, 294 Ark. 353, 742 S.W.2d 939 (1988). Rather, appointing or permitting a single attorney to represent co-defendants creates

only a "possible" conflict of interest that could prejudice either or both clients. *Burger* v. *Kemp*, ___ U.S. ___, 107 S. Ct. 3114 (1987); *Ingle, supra*. That possibility does not justify an inflexible rule that would presume prejudice in all cases. *Id*. Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that the conflict adversely affected defense counsel's performance. *Ingle, supra; Cuyler* v. *Sullivan*, 446 U.S. 335 (1980).

■ A good example of active representation of conflicting interests which adversely affected counsel's performance may be found in this court's decision in *Ingle*. Here, however, appellants have failed to demonstrate evidence of record which rises to that level. Any disparity in the evidence of guilt as between appellants was minimal, and neither accused the other of committing the crime. Ford's desire that McNichols testify coupled with McNichols' refusal to do so, while perhaps indicative of a conflict between counsel's obligation to protect McNichols' right not to testify and Ford's desire to present exculpatory evidence, did not have the adverse effect counsel would ascribe to it. For example, assurances were obtained from the court that cross-examination of McNichols would be limited should he decide to testify, while at the same time Ford was able to present evidence through other witnesses that he had nothing to do with the burglary (McNichols' proffered testimony). Although it would have been more appropriate under the circumstances for the trial court to have provided separate counsel for the appellants, our review of the record does not convince us that defense counsel actively represented conflicting interests to the extent that his performance was adversely affected.

## II. MISTRIAL

■ Appellants argue that because the State elicited statements from Ford on cross-examination to the effect that Ford first met McNichols in the "joint" and that joint meant the facility at Tucker, the trial court should have declared a mistrial. We will not dwell on this point because it is clear that counsel for the defense "opened up the line of questioning." *Berry* v. *State*, 278 Ark. 578, 647 S.W.2d 453 (1983). On direct examination of Ford, defense counsel inquired whether Ford knew McNichols. Ford explained that they first met in the "joint." Counsel then

asked, "Is that where you first met him?" Ford responded in the affirmative. Our decision in *Berry* is controlling, and we find no error on this point.

## III. PRIOR INCONSISTENT STATEMENT

At trial, McNichols' nephew testified that he, McNichols, and Ford committed the crimes charged. Defense counsel questioned the witness about a prior inconsistent statement in which the witness stated that Ford had not participated in the burglary. The witness admitted making the statement and tried to explain the inconsistency. Citing Rule 613(b) of the Arkansas Rules of Evidence and *Lewis* v. *State*, 288 Ark. 595, 709 S.W.2d 56 (1986), appellants challenge the trial court's refusal to admit the written statement into evidence. The trial court was correct.

The issue before us presents the question: under what circumstances is extrinsic evidence of a prior inconsistent statement admissible at trial where the witness admits having made the prior inconsistent statement? Ostensibly, prior inconsistent statements of a witness may be used either for impeachment purposes or as substantive evidence—with limitations. In *Chisum* v. *State*, 273 Ark. 1, 616 S.W.2d 728 (1981), we cited Rule 801(d)(1) of the then Uniform Rules of Evidence and explained that our former rule that prior inconsistent statements were admissible only for impeachment purposes and not as substantive evidence had been abolished in civil cases and modified in criminal cases.

### A. Substantive evidence

Rule 801(d)(1)(i) makes clear that in criminal cases, if the witness testifies at trial and is subject to cross-examination concerning his prior statement, the statement is not hearsay if it is inconsistent with the trial testimony of the witness and if at the time the prior inconsistent statement was made, it was given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. In the case before us, the statement by McNichols' nephew was an out-of-court statement to someone within the sheriff's department and, while it was notarized, the statement clearly does not meet the requirements of Rule 801(d)(1)(i) that it must have been subject to the penalty of perjury. Accordingly, the statement would not have been

admissible at trial as substantive evidence. *Lewis, supra; Roberts* v. *State*, 278 Ark. 550, 648 S.W.2d 44 (1983).

## B. Impeachment

In relevant part, Rule 613(b) provides that extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the statement. Prior to the adoption of Rule 613(b), it was well established that when a witness admits making a prior inconsistent statement, extrinsic evidence of that statement was not admissible. *Smith* v. *State*, 258 Ark. 601, 528 S.W.2d 389 (1975), *cert. denied*, 425 U.S. 912 (1976). In *Roberts, supra*, which was decided after the adoption of Rule 613(b), we adhered to our rule and, recently, in *Pemberton* v. *State*, 292 Ark. 405, 730 S.W.2d 889 (1987), we stated:

> The ruling in the *Roberts* case that the prior statement itself could not be quoted into evidence as part of the impeachment process was consistent with prior Arkansas cases, and indicated that the adoption of A.R.E. 613 had not presaged any change in that respect.

We also cited a Law Review case note at 37 Ark. L. Rev. 688 (1983), which points out that there is a split among the jurisdictions on the issue of whether extrinsic evidence of a prior inconsistent statement is admissible for impeachment purposes once the witness has admitted making the statement.

While we are cognizant of the policy considerations in favor of allowing extrinsic evidence as part of the impeachment process, we adhere to the position taken in our former cases. As was so aptly stated by the court of appeals in *Gross* v. *State*, 8 Ark. App. 241, 650 S.W.2d 603 (1983), "[a]n admitted liar need not be proved to be one." In light of the foregoing, we find no error in the trial court's refusal to allow introduction of extrinsic evidence of the prior inconsistent statement made by McNichols' nephew once the witness had admitted making the statement.

## IV. REBUTTAL WITNESS

At the beginning of trial all witnesses were removed from the courtroom so that no witness would be able to hear the testimony of another. *See* Rule 615 of the Arkansas Rules of Evidence. At

some point in the trial, Sharon McNichols, whom neither the State nor the defense had planned on calling, came forward and informed the prosecutor that she had listened to the testimony of Ford's alibi witness and that the testimony was a fabrication. The court allowed the State to use Sharon McNichols as a rebuttal witness over objection by appellants.

Appellants cite *McCorkle v. State*, 270 Ark. 679, 607 S.W.2d 655 (1980), and *Woodard v. State*, 261 Ark. 895, 553 S.W.2d 259 (1977), and concede that in those cases this court affirmed the trial court's decision to allow the testimony of the rebuttal witness but argue that the cases should not be controlling. We disagree.

The discretion of the trial court in refusing the testimony of a rebuttal witness who has violated the sequestration rule is narrow. *Blaylock v. Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987). That discretion is more readily abused by excluding the testimony than by admitting it. *McCorkle, supra.* Furthermore, violation of the sequestration rule through no fault of the party calling the witness is a matter which goes to the credibility of the witness—rather than competency to testify—and the power to exclude the testimony of a witness who has violated the rule should be "rarely exercised." *Woodard, supra.*

Our general rule is that the trial court's narrow discretion on this issue can be exercised to exclude the witness only "when the noncompliance is had with the consent, connivance, or procurement of a party or his attorney." *Blaylock, supra.* There being no evidence in the case before us that the State had any prior knowledge of the existence of the witness, whether she was in the courtroom, her potential as a rebuttal witness, or to what she might testify, we find no error in the trial court's decision to permit the testimony.

## V. PEREMPTORY CHALLENGES

Citing *Batson v. Kentucky*, 476 U.S. 79 (1986), and *Ward v. State*, 293 Ark. 88, 733 S.W.2d 728 (1987), appellants argue that the State's use of its peremptory challenges demonstrated a pattern of strikes sufficient to establish a prima facie case of discriminatory purpose which shifted the burden to the prosecution to give a sufficiently neutral explanation for the strikes in the

context of a "sensitive inquiry" by the court. According to appellants, the prosecution did not meet its burden as concerns two of the excluded jurors. We conclude that appellants failed to establish a prima facie case of discriminatory purpose and that we therefore need not concern ourselves with the requirements of a sensitive inquiry.

Both Ford and McNichols are black. Of the potential jurors on the jury panel, the initial group of six which were examined contained three members of the appellants' minority race. Two of the three minority veniremen were struck—the third was seated.

Exercise of the prosecution's peremptory challenges in a manner which does not result in an "all-white" jury, while by no means determinative of the question of whether there is evidence of discriminatory purpose, is of some significance. We said in *Ward*, "the best answer the state can have to a charge of discrimination is to be able to point to a jury which has some black members." On a related question, this court recently stated:

> [W]here the use of a peremptory challenge results in exclusion from the jury of all members of the defendant's minority race, it is not necessary to show exclusion of more than one minority juror of the same race as the defendant to make a prima facie case of discriminatory use of a peremptory challenge, and thus invoke the "sensitive inquiry" requirement.

*Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988).

This does not necessarily mean that where more than one minority juror of the same race as the defendant is excluded by a peremptory challenge, we automatically have a prima facie case of discriminatory purpose; rather, we look to the record to see if the prosecution's exercise of its peremptory challenges evidences a pattern of strikes. In the case before us, we do not find at that point in the proceedings when the first group of veniremen had been examined that there was evidence of a pattern of strikes. The prosecution still had peremptory challenges remaining and had not exercised its challenges in a manner so as to exclude all veniremen of appellants' race.

Later in the jury selection process, a second group of prospective jurors was examined in which there was one black.

The State exercised two peremptory challenges to members of this group, which resulted in the strike of the black and a venireman not of appellants' race. In regards to the strike of the black, the evidence is overwhelming that the strike was not racially motivated. The record clearly reflects that the excluded juror had a daughter who was charged by the State with second degree murder and had a deceased son who had been prosecuted on several occasions. Again, as to this second group, we find no pattern of strikes.

This court's concern over the possibility that peremptory challenges might be used to exclude potential jurors solely on account of their race is evidenced by our decisions in *Ward* and *Mitchell*. However, the record before us reveals that after the jury was seated—including the one juror of appellants' race—the State had peremptory challenges remaining. Further, the State did not exercise all of its peremptory challenges to exclude just members of appellants' race—a fact not present in *Ward*. Based upon our review of the record, we simply cannot conclude that taken as a whole appellants established a prima facie case of discriminatory purpose in the State's exercise of its peremptory challenges.

## VI. HEARSAY

Ford and McNichols argue that the court erred in allowing the hearsay testimony of Officer Barbara Morris in which she testified as to communications received from her department which caused her to observe the Wyllis vehicle while it was parked in front of Fat Daddy's tavern. Not only do appellants fail to cite any authority or make convincing argument on this point, *Garrett v. State*, 294 Ark. 556, 744 S.W.2d 731 (1988), but also we fail to see that hearsay was in fact introduced.

At a bench conference, the prosecutor stated that he wanted to introduce testimony through Officer Morris that she had been told by her captain that the Blytheville force contacted the police department and told them that individuals were selling stolen liquor and cigarettes at the tavern. However, that testimony was never introduced. The officer's only statements at trial in this regard were that she was watching the vehicle at a particular time and that she did so in response to communications she had received. There was no elaboration as to the contents of

those communications. As such, we find appellants' arguments on this point to be without merit.

### VII. ACCOMPLICE STATUS OF WITNESSES: VIII. FAILURE TO DIRECT VERDICT

As to their two final points on appeal, appellants first argue that because the accomplice status of Jo Ann Wyllis, Johnny Wyllis, and William Harvey was in dispute, resulting in a question of fact for the jury, it was error to refuse appellants' proffered AMCI instruction (AMCI 403—Accomplice Status in Dispute—Corroboration). Appellants also claim that the court erred in not directing a verdict in appellants' favor as there was insufficient evidence to corroborate the accomplice testimony of these witnesses.

One's status as an accomplice is a mixed question of law and fact, and the issue should be submitted to the jury where there is evidence to support a jury's finding that the witness was an accomplice. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981); *Powell* v. *State*, 231 Ark. 737, 332 S.W.2d 483 (1960). It is the defendant's burden to prove that a witness is an accomplice whose testimony must be corroborated. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). An accomplice is one who, with the purpose of promoting or facilitating the commission of an offense, either advises, encourages or aids another in the planning or commission of the offense, or fails to make a proper effort to prevent the commission of the offense provided he has a legal duty to prevent it. *Scherrer, supra.* Mere presence, acquiescence, silence or knowledge that a crime is being committed, in the absence of a legal duty to act, is not sufficient to make one an accomplice. *Spears* v. *State*, 280 Ark. 577, 660 S.W.2d 913 (1983).

Ford and McNichols were charged with burglary and theft in connection with the items taken from the Cross Town Liquor Store. Our review of the record discloses no evidence by which a jury could conclude that either Jo Ann Wyllis, Johnny Wyllis, or William Harvey could be considered as having advised, aided or encouraged Ford and McNichols in the planning or commission of the burglary and subsequent theft which occurred at the liquor store. In short, they were not accomplices, and appellants were not entitled to AMCI instruction 403.

■ Appellants' second point is also without merit. Generally, a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. *Scherrer, supra.* Corroborating evidence is not sufficient if it merely shows that the offense was committed and the circumstances thereof. *Id.* Here, the evidence goes much further.

Gary Edwards, the owner of the liquor store, corroborated the testimony of McNichols' nephew, who was an accomplice, as to the mode of entry by which the store was broken into and the kinds of items taken. Edwards further identified his gun found in the car in which appellants were riding as stolen from the store. Other stolen items seized both from the car and from the residence where Ford and McNichols spent the night were identified by Edwards. He also identified the liquor seized from Fat Daddy's as his stolen property. That same liquor was identified by the owner of Fat Daddy's as the liquor purchased from McNichols. Officers Morris and Tunson identified several of the items introduced at trial, such as cartons of cigarettes and liquor, as items taken from the car and the residence occupied by Ford and McNichols. Officer Morris placed appellant Ford not only in the car but also at the tavern.

■ We have already determined that Jo Ann Wyllis was not an accomplice. Her testimony, in addition to that set out above, that she found the appellants in her residence shortly after the burglary with liquor and cigarettes (later identified as stolen) which they transported to Fat Daddy's, where some of the liquor was sold, directly connects both appellants to the crimes charged. In addition, such evidence further corroborates the testimony of the accomplice, McNichols' nephew. For these reasons, we find no error in the trial court's failure to direct a verdict in appellants' favor for lack of corroborating evidence.

Affirmed.

PURTLE, J., dissents in part and concurs in part.

JOHN I. PURTLE, Justice, concurring in part; dissenting in part. The majority opinion is correct in concluding the evidence was sufficient to sustain the conviction of McNichols. It is incorrect in finding sufficient evidence to support the conviction of

Ford. Therefore, I respectfully dissent in part.

The statute on accomplice testimony, Ark. Code Ann. § 16-89-111(e)(1) (1987), provides:

> A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

We have amplified the statute by saying: "When the corroboration is weighed, the testimony of the accomplice must be completely disregarded. The independent testimony may be circumstantial, but it must be substantial evidence and must do more than raise a suspicion of guilt." *Combs* v. *State*, 286 Ark. 74, 76, 690 S.W.2d 712, 712-713 (1985), citing *Olles* v. *State*, 260 Ark. 571, 542 S.W.2d 755 (1976).

Excluding the testimony of McNichols' nephew, who clearly was an accomplice, the majority opinion notes only testimony placing Ford at the tavern when the liquor was sold, in the car departing from the tavern with McNichols, and in the place where McNichols spent the night. While a witness disputed the alibi testimony given by Ford and Betty Lark, that does not tend to connect Ford with the commission of the offense.

In its conclusion, the majority opinion emphasizes that the testimony of Jo Ann Wyllis connects Ford with the crime. She testified that she awoke to find McNichols, McNichols' nephew, and Ford in her house along with the liquor and cigarettes. I know of no case holding that being in the presence of the fruits of a crime sufficiently tends to connect an accused to the crime's commission to corroborate the testimony of an accomplice. Such a connection could only result if the circumstances were such that the accused's presence could have hardly any other explanation, *e.g.*, being in *possession* of the fruits of a crime, such as a stolen automobile. There is no substantial evidence tending to connect Ford with the crime other than the testimony of an accomplice. Without the testimony of McNichols' nephew, Ford's conviction can rest upon nothing other than guilt by association. I would reverse and dismiss Ford's conviction. *Combs* v. *State, supra.*