Haskell Wayne SNELGROVE *v.* STATE of Arkansas

CR 86-224                                              728 S.W.2d 497

Supreme Court of Arkansas
Opinion delivered May 4, 1987

*Pruitt & Hodnett*, by: *Roger T. Jeremiah*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Haskell Wayne Snelgrove, was originally charged with capital murder. The information alleged that he caused the deaths of his mother and his wife in the course of the same criminal episode. As a result of plea bargaining, the capital charge was reduced to two counts of first degree murder. He entered pleas of nolo contendere and was sentenced to life imprisonment in each case. In a post-conviction proceeding, he now collaterally attacks both convictions pursuant to A.R.Cr.P. Rule 37. We affirm the trial court's denial of relief.

Appellant contends the trial court erred in accepting his pleas of nolo contendere because there was no recitation of the allegations which formed the basis for the pleas and because the court did not require him to state personally that there was a factual basis for the pleas.

A.R.Cr.P. Rule 24.6 provides:

RULE 24.6. *Determining Accuracy of Plea.*

The court shall not enter a judgment upon a plea of guilty *or nolo contendere* without making such inquiry as will establish that there is a factual basis for the plea.

(Emphasis added.)

Compliance with Rule 24 is mandatory, but substantial compliance will suffice. *McDaniel v. State*, 288 Ark. 629, 708 S.W.2d 613 (1986). Further, if the factual basis is not sufficiently determined during the plea proceedings, it may be established at the Rule 37 post-conviction hearing. *Davis v. State*, 267 Ark. 507, 592 S.W.2d 118 (1980). Appellant is correct in stating that the following colloquy, which took place at the time of the pleas, did not establish a factual basis for his plea:

*THE COURT*: Is there a factual basis for the pleas, Mr. Marquette?

*MR. MARQUETTE [APPELLANT'S ATTORNEY]*: Yes, Sir.

*THE COURT*: Mr. Fields?

*MR. FIELDS [PROSECUTING ATTORNEY]*: Yes, Sir.

However, the deficiencies in establishing a factual basis were supplied in other responses and at the post-conviction hearing.

At the post-conviction hearing, appellant admitted that before he entered his pleas of nolo contendere, he attended an evidence suppression hearing and there heard the trial court rule on the admissibility of the following evidence:

(1) The testimony of a minister to whom appellant had confessed that he was a beast-man who ate raw flesh and drank blood, and that demons and devils had told him to kill his mother and his wife;

(2) A letter written by his mother which expressed fear of appellant;

(3) Evidence which showed the victims were stabbed to death;

(4) A pocket knife, which was found in appellant's possession, had human blood on it, and the size of the blade was consistent with the width and depth of the stab wounds in the victims;

(5) A medical report which established that semen, which could have been appellant's, was found in his mother; and

(6) Evidence about prior convictions for rape which involved two women, one of whom was made to lie in the bathtub filled with gasoline, while appellant forced the other to have sexual intercourse by threatening to throw a lighted match into the gasoline.

The trial judge reserved ruling on the mother's letter and the prior rape convictions, but refused to suppress the other evidence. Obviously, in allowing the appellant to enter the pleas, the trial

court was aware of these facts, as was appellant. The attorneys who represented appellant testified at the Rule 37 hearing that they explained the nature of the crimes to appellant, discussed all of the evidence with him, gave him a scenario of how they thought the trial would proceed, and discussed the possible sentences.

At the plea hearing the trial court determined that:

(1) Appellant knew the nature of the charges;

(2) Appellant knew the possible sentences;

(3) Appellant understood his nolo contendere pleas;

(4) Appellant's attorneys had explained the plea statement to him four times;

(5) Appellant understood he was giving up his right to appeal, to be tried by a jury, to cross-examine witnesses and to testify;

(6) Appellant understood he was to receive two life sentences, and;

(7) Appellant was not coerced into making the pleas.

Standard 14-1.6 of the American Bar Association's Standards for Criminal Justice defines the requirement of a factual basis as follows: "The requirement of a factual basis refers to the presence of sufficient evidence, adduced at the taking of a guilty plea or plea of nolo contendere, upon which a judge may fairly conclude that a defendant could be convicted if the defendant elected to stand trial."

The record from the plea hearing and the post-conviction hearing establish that there was a factual basis for the pleas and there was sufficient evidence from which the trial court could conclude that appellant would be found guilty if he elected to proceed to trial.

Next, appellant argues that he did not personally answer the court's inquiry about whether there was a factual basis for the pleas, but instead his attorney answered and, therefore, this case should be reversed. He cites *McDaniel* v. *State*, 288 Ark. 629, 708 S.W.2d 613 (1986), as authority for his argument. *McDaniel* holds that, in a plea of guilty, the trial court

shall ask the accused personally if he committed the act with which he is charged and whether he is pleading guilty because he is guilty. We do not consider the issue in this case because it was not raised in the petition for post-conviction relief. Rule 37.2(b) and (e) provide that, in order to be considered, an issue must be raised in the original or amended petition, and an issue is waived if it is not raised in the petition. We have long upheld this provision. *Wiser* v. *State*, 256 Ark. 921, 511 S.W.2d 178 (1974). Even though we do not consider the issue as it applies to this appellant, it is a subject of first impression, and one on which we have never given the trial courts any direction. We take this opportunity to notify the trial bench that, from this time forward, the *McDaniel* rationale will be applicable to pleas of nolo contendere. Contrary to the Federal Rules of Criminal Procedure, our Rules of Criminal Procedure require a factual basis for the nolo contendere plea as well as the plea of guilty. Since the sentencing power of the court is not reduced upon the entry of the nolo plea, it is equally important to make certain that the accused actually be guilty of the offense to which the nolo plea is offered. While the insistence upon a factual basis may make the nolo plea less attractive because a disclosure of the accused's misdeeds will be made public, this is a reasonable price to pay for the assurance that the accused is not innocent of the charge for some reason. Further, it will eliminate difficulty at post-conviction proceedings in determining the accuracy of the plea, and it will be useful to the trial court in determining the sentence. The form of the personal question can be concise. After the prosecutor makes a proffer of the facts which he would prove, the judge can ask the accused: "Are these the facts which you do not contest?"

Appellant next argues that he did not understand the sentence he was to receive and, therefore, his plea was not voluntarily, knowingly, and intelligently entered. The argument is without merit.

A.R.Cr.P. Rule 24.5 provides:

> The court shall not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. The court shall determine whether the tendered plea is the result of a plea agreement. If it is, the court shall require that the agreement be stated. The court shall also

address the defendant personally and determine whether any force or threats, or any promises apart from a plea agreement, were used to induce the plea.

The following colloquy took place at the plea proceedings:

*THE COURT*: Is this plea of nolo contendere based upon a plea agreement, do you know what you are to receive here, today?

*MARQUETTE [APPELLANT'S ATTORNEY]*: The judge wants to know if there has been some type of agreement between the prosecuting attorney's office and us?

*APPELLANT*: Yes, Sir.

*THE COURT*: What is that agreement, what are you supposed to receive?

*APPELLANT*: A sentence of a life sentence.

*THE COURT*: Two of them?

*APPELLANT*: One that I know of.

*FIELDS [PROSECUTING ATTORNEY]*: Two together, right? There will be two as one.

*MARQUETTE [APPELLANT'S ATTORNEY]*: There will be two sentences, they will run concurrently or at the same time; they will not be consecutive, one after the other, they will run at the same time.

*THE COURT*: Now, do you understand what you're supposed to receive?

*APPELLANT*: Yes, Sir.

*THE COURT*: And what is it?

*APPELLANT*: Life sentence.

*THE COURT*: How many?

*APPELLANT*: It could go two.

*THE COURT*: Two?

*APPELLANT*: Two?

*THE COURT*: I need it to be a little more definite.

*APPELLANT*: Two life sentences.

*THE COURT*: Do you understand that the Court doesn't have to go along with that agreement if it doesn't want to?

*APPELLANT*: Yes, Sir, I understand.

*THE COURT*: Was any force, threats, promises, coercion of any kind used against you to get you to enter these pleas?

*APPELLANT*: No Sir, there wasn't.

■ As is readily seen, the appellant apparently did not initially understand the intricacies of how the agreement would result in him serving the equivalent of one life sentence by allowing him to serve two sentences concurrently. It is clear, however, that the trial court took pains to make certain that, before the plea proceedings went further, appellant not only understood the terms of the agreement, but that he also understood that the court was not bound by the agreement. Further, the court did order that the two life sentences run concurrently. Appellant admits that he has not suffered any hardship by serving two life sentences concurrently, as opposed to one. He argues, however, that his initial misunderstanding of the terms was so obvious that the plea became involuntary and should have been rejected. He cites no cases in support of his argument, and we have found none. The requirements of A.R.Cr.P. Rule 24.5 were met.

Appellant's final contention is that he received ineffective assistance of counsel because he was given inaccurate parole information. Appellant testified at the rule 37 hearing that his two attorneys left him with the impression that he would be paroled in two and one-half to three years. The attorneys, however, testified that they never told appellant that he would be paroled after a certain number of years. One of the attorneys explained: "We never specifically told him when he will be able to get out on parole. I think we told him that if his sentence were reduced to a number of years, there's a possibility that he would be eligible for parole in approximately eight to nine years."

The trial court is in the best position to resolve any conflicts in testimony. As we stated in *Huff* v. *State*, 289 Ark. 404, 711 S.W.2d 801 (1986):

> Here, the trial court was basically presented with a swearing match: appellant claimed his attorney erroneously advised him that he would be paroled within 4 or 5 years and, based on that, he entered his guilty plea. The attorney claimed [otherwise]. The trial court evidently believed the attorney. Conflicts in testimony are for the trial judge to resolve, and he is not required to believe any witness's testimony, especially the testimony of the accused since he has the most interest in the outcome of the proceedings. . . . We cannot say his findings are against a preponderance of the evidence.

Affirmed.

HICKMAN, J., concurs.