Steve GIBSON *v.* STATE of Arkansas

CR 89-131                                      781 S.W.2d 469

Supreme Court of Arkansas
Opinion delivered December 18, 1989

*Roger T. Jeremiah*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This is an appeal from the denial of a petition for post-conviction relief pursuant to A.R.Cr.P. Rule 37. The appellant raises three points for reversal: (1) ineffective assistance of counsel; (2) no factual basis for the guilty plea; and (3) failure of the state to adhere to its promise to allow the appellant to serve his time in Oklahoma. We find no merit in these arguments.

The appellant, Steve Gibson, and a co-defendant, Carlos Humphrey, went to a convenience store and service station at about 3:30 a.m. on June 6, 1986. The record reveals that the appellant stayed outside near the gasoline pumps, allegedly for the purpose of filling a small container with gasoline to prime the fuel pump on a stalled automobile. Humphrey went inside and attempted to buy beer. Upon being refused because of the late hour, he pulled a handgun, saying "I'll take the money instead," and robbed the two employees.

During the time Humphrey was inside the store, a witness

sitting in a parked truck (a Mr. Barnard) observed the appellant about thirty feet from the store window appearing to be looking in. Two other persons, co-defendants Liles and Yendell, had remained in an automobile a short distance from the convenience store. When one of the clerks shouted for the police, appellant and Humphrey broke into a run and were seen getting into an automobile which was waiting with lights off and motor running. All four were arrested several hours later and charged with aggravated robbery. The appellant and Humphrey were also charged as felons in possession of firearms, with theft of property and with being habitual criminals.

The co-defendants, Liles and Yendell, were handled separately by the state. Yendell was released on bond and disappeared. Liles obtained the services of private counsel and received a suspended sentence. The public defender was appointed to represent the appellant and Humphrey.

The appellant insisted that he did not know that Humphrey was going to rob the store or that he had a gun in his possession. Humphrey corroborated the appellant's version of the facts. The victims had identified Humphrey as the person who held the gun on them and robbed them. On the other hand, there was no positive identification of appellant except that appellant was wearing a green flannel shirt when arrested and the individual who waited outside near the gas pumps was described as wearing a green shirt.

Defense counsel moved for a severance based upon the state's intention to introduce statements Humphrey was alleged to have made to a third party which incriminated appellant as well as himself. At the close of a hearing on the severance motion the court granted severance and with that, the state announced that it would not offer the incriminating statements. Whether the order for severance was then vacated is not clear, as the state and the defendants entered into plea agreements and pre-trial proceedings were terminated.

On November 13, 1986, Humphrey and the appellant entered pleas of guilty. The appellant was sentenced to twenty-five years on the aggravated robbery charge, with five years suspended. He received six years, to run concurrently, on the felon in possession charge. A charge of theft was dismissed.

Humphrey was given thirty-two and one-half years for the aggravated robbery and six years on the felon in possession conviction, to run concurrently with the aggravated robbery charge, and both to run concurrently with any Oklahoma sentence.

Appellant contends no factual basis for his guilty pleas was established as required by A.R.Cr.P. Rule 24.6. He cites only *McDaniel* v. *State*, 288 Ark. 629, 708 S.W.2d 613 (1986), where we held that the court must ask the defendant directly if he is pleading guilty because he is guilty. But we have held several times since *McDaniel* that a factual basis is not so narrowly defined. *See Snellgrove* v. *State*, 292 Ark. 116, 728 S.W.2d 497 (1987); *Furr* v. *State*, 297 Ark. 232, 761 S.W.2d 1650 (1980). Moreover, the record of the guilty plea hearing establishes clearly that the trial court meticulously complied with Rule 24.6. He asked defense counsel, the deputy prosecutor, and both appellant and Humphrey in turn if a factual basis existed and obtained a positive response from each (quoting from page 95 of the record):

> THE COURT: Mr. Gibson, is there a factual basis for your pleas in these cases?
>
> MR. DEFENDANT GIBSON: Sir?
>
> THE COURT: Is there a factual basis for your pleas of guilty in these cases?
>
> MR. DEFENDANT GIBSON: I plead guilty, yes.
>
> THE COURT: I asked you if there was a factual basis for it. That means do you feel that the jury could find you guilty if all this evidence was presented against you?
>
> MR. DEFENDANT GIBSON: I believe it's possible, yes.
>
> THE COURT: Mr. Humphrey?
>
> [MR. DEFENDANT HUMPHREY]: I believe it's possible.
>
> THE COURT: Well, do you want to withdraw your pleas of guilty at this time, Mr. Gibson?
>
> MR. DEFENDANT GIBSON: No, sir.

THE COURT: Do you want to go forward with this, Mr. Gibson?

MR. DEFENDANT GIBSON: Yes.

THE COURT: Mr. Humphrey?

MR. DEFENDANT HUMPHREY: Yes.

Even if a factual basis had been wanting at the guilty plea hearing, it was adequately supplied by the testimony of Mr. Barnard at the Rule 37 hearing, which is sufficient. *Furr* v. *State, supra.* Appellant's undisputed presence outside the gas station during the robbery, his running with Humphrey to the waiting car, and his giving a false name and other false information to the police at the time of and following his arrest are sufficient to establish a factual basis.

Turning to the contention that defense counsel was ineffective because there was a conflict of interest between Humphrey and appellant, in *Burger* v. *Kemp*, 483 U.S. 776 (1987), it was held that one attorney may be appointed to represent two or more defendants without such representation constituting a per se violation of the Sixth Amendment right to effective assistance of counsel. In order to prevail on such a contention, the defendant must demonstrate that counsel actively represented conflicting interests which adversely affected counsel's performance. *Ingle* v. *State*, 294 Ark. 353, 742 S.W.2d 939 (1988). Appellant has made no such showing. The public defender in this case was an attorney with eleven years experience in the defense of criminal cases. He testified that there was no conflict between Humphrey's defense and appellant's defense, that Humphrey intended to testify that he had no prior intent to rob the store but when the clerks refused to sell him beer he drew his gun and robbed them on sudden impluse. Humphrey's proposed testimony was that appellant did not participate in a robbery and did not even know Humphrey was armed. Appellant's testimony was expected to coincide entirely with Humphrey's. Thus, defense counsel testified that the two versions, rather than being in conflict, were entirely consistent. The trial court's findings accepted that testimony as credible.

In *Holloway* v. *Arkansas*, 435 U.S. 475 (1978), the Supreme Court recognized that defense counsel "is in the best

position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial."

Nor does the record otherwise support an inference of ineffective assistance of counsel. The public defender was neither indifferent nor ineffectual. The plea agreements are some indication of counsel's effectiveness. The defendants were charged as habitual offenders with aggravated robbery, felon in possession of a firearm and theft. The state initially offered only a life sentence to Humphrey and 45 years with 5 years suspended to appellant but defense counsel negotiated decidedly more favorable terms: the aggravated robbery was reduced to robbery, the felon in possession sentence was merged with the robbery and the theft charge was dismissed. Humphrey agreed to plead guilty to aggravated robbery for a recommended sentence of 32.5 years with 5 years suspended. Appellant's plea was based on a recommended sentence of 20 years with 5 suspended. Humphrey testified at the Rule 37 hearing that he had expected both he and Gibson would receive life sentences.

Finally, appellant maintains the state breached a promise to allow him to serve his time in Oklahoma where he was subject to a lengthy sentence. The state contends that there was no such agreement. The deputy prosecutor, testifying at the Rule 37 hearing, said that when the plea bargaining reached its final stages, with the trial imminent, he went to the jail to talk to Humphrey and the appellant at the request of, and accompanied by, defense counsel. He said the defendants tried to negotiate for shorter sentences based on family circumstances and the like:

> . . . I can't really remember exactly what the reason was, I told Mr. Settle [defense counsel] and I told them I was not coming off the time at all, and then they discussed well, what if we serve it in Oklahoma. I said I don't care where you serve the time, but I want you to be—to understand that I have nothing to do with you serving anything, anywhere, other than in the State of Arkansas.

> Q: Okay. Well, now you just heard the testimony of Mr. Gibson, he said you specifically told him you can serve your time in Oklahoma.

> A: That's a bald-faced lie.

Q: You never told him that?

A: I never told him anything like that. I told him that if there was some mechanism available in the State of Arkansas, where he could go to the Department of Correction and he could file a petition with the State of Oklahoma and Oklahoma would accept him back, that the State of Arkansas, as far as my office was concerned, would not resist any action on its part to have him transferred to serve his time.

Nor does the plea agreement provide support for this contention. At the plea hearing the only discussion concerning the Oklahoma sentences came when the judge asked defense counsel if the defendants understood that even though Arkansas was willing for the sentences to run concurrently with the Oklahoma sentences, that Oklahoma was not bound by such provision. Told the defendants did understand, the trial judge asked both defendants if they wished to withdraw their pleas of guilty or knew of any reason why the sentences should not be imposed. They answered no on both counts and each defendant was sentenced in strict accordance with the plea agreement. The appellant has, we believe, wholly failed to meet the heavy burden of proving ineffective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668 (1984).

AFFIRMED.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The majority is written clearly contrary to the facts of this case and our prior decisions. I first discuss the issue of whether the appellant received ineffective assistance of counsel. Although the appointment of one attorney to represent two or more defendants is not *per se* violative of the constitutional guarantees of the Sixth Amendment, it does create a possible conflict of interest that should be closely watched. *Burger* v. *Kemp*, 483 U.S. 776 (1987); *Holloway* v. *Arkansas*, 435 U.S. 475 (1978); and *Ingle* v. *State*, 294 Ark. 353, 742 S.W.2d 939 (1988). .

In the present case, the appellant's best defense depended upon Humphrey either pleading guilty or being convicted. If Humphrey had been tried first and convicted, he would have been

available to testify at the appellant's trial and could not have claimed the right to remain silent under the Fifth Amendment. He stated that he would not have testified for the appellant at a joint trial. However, had Humphrey been tried first, he would have testified that the robbery had been committed on the spur of the moment and that it was all his idea. Humphrey stated that he conceived the idea after one of the clerks refused to sell him beer. The witnesses identified him as the gun-wielding robber. There was little likelihood that Humphrey could have escaped conviction under any circumstances. His best strategy would have been to hitch his hopes to the appellant and seek a bargain providing for something less than a life sentence.

All of the evidence against the appellant was circumstantial. Neither the victims nor any witnesses were able to identify the appellant. The circumstantial evidence available was sufficient to uphold a conviction of the appellant had it been presented at trial. It is the appellant's contention that his counsel was forced into a situation where he had to plead the appellant guilty and take a stiffer sentence in order to plead Humphrey guilty and obtain something less than he would have received from a jury.

At the Rule 37 hearing, the public defender who had represented the appellant at the trial responded in the following manner to questions posed by the appellant's present attorney:

> Q. Would it be better for Mr. Gibson to try Mr. Humphrey first?
>
> A. On, yeah.
>
> Q. And, assuming Mr. Humphrey is convicted, then he would really have no reason not to testify for Mr. Gibson?
>
> A. That would be correct.
>
> Q. Did you try and do anything to accomplish that?
>
> A. No, I don't believe I did. I — I don't recall anything. . . .
>
> Q. You made no motion that Mr. Humphrey be tried first?
>
> A. No, I did not (T. 162)

Although the prosecution had strong inculpatory statements

from Humphrey, they agreed not to introduce them if both the appellant and Humphrey either pled guilty or were tried together. This, of course, was a lucky break for the codefendant but bad news for the appellant. The following questions and answers relate to these statements and the strategy of the state on the package deal:

Q. And the State agreed not to use those statements —

A. And —

Q. — in order to try Mr. Gibson and Mr. Humphrey together?

A. Exactly.

Q. And the reason for that is because they were worried about not convicting Mr. Gibson?

A. Uh-huh, but they chose to try Mr. Gibson first.

Q. Uh-huh. And the reason for that is that they were trying to cut a deal with Mr. Humphrey to enter a plea and testify against Mr. Gibson?

A. They always knew — they would have to always know that they — Mr. Humphrey would not be the problem to trying this case, as far as making a case against either one of them. Mr. Humphrey, they could always make a case against. There would be no reason to hold Mr. Gibson —

Q. The State had Humphrey and they wanted Gibson?

A. Uh-huh, that's correct.

The motives of the state become even clearer in the following testimony of the public defender: "In all the years that I—all the—I don't know, hundreds of cases, that I tried and represented defendants, I never heard of the State being anxious—so anxious to nail the lookout man more than the man, who actually did it, especially, when the man, who actually did it, had a worse record than the alleged lookout man."

It is obvious that the appellant would have had a better chance had Humphrey been in a position to testify on his behalf. Humphrey understandably did not want to testify while his case was still pending. He intended to invoke his right to remain silent.

From the appellant's standpoint, therefore, it would have been essential to have Humphrey tried first. The defense attorney afforded some insight into his tactics when he was questioned about Humphrey's unwillingness to take the stand at a joint trial. Referring to Humphrey's decision, he said: "I think in this case, if we had gone in like a sack of cement, I think the jury would have given that sack of cement life. We couldn't do that. Mr. Humphrey could not afford to do that. I knew that Mr. Humphrey was in big trouble. Mr. Humphrey knew he was in big trouble."

The defense counsel went on to claim that if Humphrey had testified on the appellant's behalf, as well as his own, his testimony would have been hand-in-glove with the appellant's defense. It would have indicated that Humphrey was the only one of the two men who knew a robbery was occurring. The defense counsel admitted that it would definitely have been in the appellant's best interest for Humphrey to have been tried first. He never made a request, however, because he no doubt felt loyalty to both clients and was doing his utmost to serve both at the same time.

The case of *Boyett* v. *State*, 290 Ark. 43, 716 S.W.2d 749 (1986), concerned representation by single counsel of persons jointly accused of a crime. In reversing the trial court's refusal to grant a hearing on the basis of ineffective assistance of counsel, we stated: "A separate attorney for Boyett could probably have negotiated a lighter punishment than that to be inflicted upon Rice. But Boyett's advantages melted away when there was only one defense lawyer for both defendants, for that lawyer obviously could not in good conscience play one of his clients against the other in pretrial negotiations. We are not saying that he is entitled to relief; we are saying that he is entitled to a hearing."

The defense counsel in the present case was duty-bound to represent each of his clients in the best possible manner and to the best of his ability. That proved an impossibility when it became obvious that the state's case against the appellant was not nearly as strong as that against Humphrey. A conflict of interests between the codefendants surfaced. The state offered only a package deal, which included a plea of guilty by the appellant. No matter how hard the attorney tried, he could not possibly fully

represent the interests of both Humphrey and the appellant under the circumstances of this case. The deal to get Humphrey out for less than life may have well cost the appellant a few years.

As the United States Supreme Court stated in *Holloway* v. *Arkansas*: "[J]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . [T]he evil — it bears repeating — is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial negotiations and in the sentencing process." 435 U.S. at 489-490.

Although neither the appellant nor Humphrey had much chance of being found innocent, the odds were more strongly against Humphrey than the appellant. Even the wisdom of Solomon himself probably would have failed any attorney in his efforts to effectively represent both defendants in this case. The defendant was denied effective assistance of counsel under these circumstances.

There was not a factual basis for the appellant's guilty plea. He never answered the question about a factual basis. He did however admit that a jury might convict him at trial. That is a distinct possibility anytime a person is charged with a crime.