Terry Michael STEVENS *v.* STATE of Arkansas

CA CR 91-255                                              832 S.W.2d 275

Court of Appeals of Arkansas
Division I
Opinion delivered June 3, 1992

210

*John Joplin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Melissa K. Rust*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Terry Stevens was charged by information with possession of drug paraphernalia and possession of methamphetamine. The State also alleged that he had at least four prior felony convictions and was subject to extended imprisonment as an habitual offender under Ark. Code Ann. 5-4-501

(1987). The jury found Stevens guilty of possession of drug paraphernalia and he was sentenced by the court to ten years imprisonment.

On appeal three issues are raised: (1) that the court erred in not granting appellant's motion to suppress; (2) that the court erred in denying a motion for mistrial made during closing argument; and (3) that the court erred in admitting evidence of some of the appellant's prior convictions. We find no error and affirm.

On June 4, 1990, Jerry Roller, a Fort Smith police officer, saw the appellant run a red light. Roller pursued Stevens at speeds approaching eighty miles an hour and saw Stevens run several stop signs. When he was finally stopped, the appellant got out of his car, locked it, tossed the keys inside, and shut the door. The vehicle was a Chevrolet Chevette hatchback. The appellant was immediately placed under arrest for DWI and fleeing an officer. Police officers promptly unlocked the car and searched it. Drug paraphernalia was found in an athletic bag located in the hatchback area.

At the hearing on the motion to suppress, Officer Roller testified that it was the normal practice of the department to search the vehicle when the driver is placed under arrest. Roller also testified that this was "an inventory type search" and that the department had no policy whatever in regard to the opening of closed containers.

Stevens argues that this was an inventory search and that because the department had no policy regulating opening of closed containers the search was not a reasonable one within the meaning of the Fourth Amendment to the United States Constitution. *Florida* v. *Wells*, 495 U.S. 1 (1990); *see also Kirk* v. *State*, 38 Ark. App. 159, 832 S.W.2d 271 (1992). The State, on the other hand, contends that the case is governed by *New York* v. *Belton*, 453 U.S. 454 (1981), because it was a search of an automobile incident to a lawful custodial arrest. We agree with the State.

All searches conducted without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. *Coolidge* v.

*New Hampshire*, 403 U.S. 443 (1971); *Johnson* v. *State*, 291 Ark. 260, 724 S.W.2d 160 (1987), *cert. denied* 484 U.S. 830. In *New York* v. *Belton*, 453 U.S. 454 (1981), the defendant was stopped for speeding, the officer smelled marijuana, and the defendant was arrested for possession. The officer then searched the passenger compartment of the car, found a leather jacket, unzipped one of the pockets, and discovered cocaine. In rejecting the defendant's contention that the Fourth Amendment had been violated the Court said:

> [W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment. . . . Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

In the case at bar, there is no question but that the defendant was lawfully arrested and that the search was a contemporaneous incident to the arrest. Although the Court in *Belton* stated that its holding did not extend to the trunk of a car,[1] courts which have considered the issue have held that the "hatchback" area of a vehicle is within the "passenger compartment" of the car, as that phrase was used in *Belton*. *United States* v. *Russell*, 670 F.2d 323 (D.C. Cir. 1982), *cert. denied* 457 U.S. 1108; *State* v. *Delossantos*, 211 Conn. 258, 559 A.2d 164 (1989), *cert. denied* 110 S.C. 188. *See also* 3 Wayne R. LaFave, *Search and Seizure* § 7.1(c) at 16 (2d ed. 1987 & Supp. 1992). We agree with the conclusions of the courts in *Russell* and *Delossantos*.

We do not think it determinative that the officer described the search as an "inventory search". A search that is justifiable as incident to a lawful custodial arrest is made no less

---

[1] *New York* v. *Belton*, 453 U.S. at 461, footnote 4.

so by the officer's description of it as an inventory. We find no error in the court's denial of the motion to suppress.

During closing argument, the appellant's lawyer said:

> The officer saw this car only for a matter of minutes. The testimony did show that it was Terry Stevens' car, but when you consider the evidence in light of your common sense, think — think how it works. A lot of times you know how it is in a household situation. Everyone doesn't just have his or her own car and nobody else rides in it. A lot of times family members use cars to go somewhere. Maybe they borrow the car for a day or two. There's a lot of situations where more than one person uses a vehicle. I don't think you can say just because somebody was seen driving a car for just a few minutes that that proves that he knew everything that was in the car.

He then discussed for the jury the appellant's right to refuse to testify. On rebuttal the prosecuting attorney said:

> He has raised the specter that maybe it is not the defendant's. Well, whose is it? If this bag belonged to somebody else, why isn't anybody in here testifying that they had seen somebody else with this bag or that it is their bag? I can understand why they wouldn't come in and say it's their bag, but. . .

At this point defense counsel was permitted to approach the bench. He argued that the prosecutor's statement was a reference to the defendant's failure to testify and moved for a mistrial. The court denied the motion.

The crux of appellant's argument is that the prosecutor's statement constituted a veiled reference to his failure to testify. *See Bailey* v. *State*, 287 Ark. 183, 697 S.W.2d 110 (1985). In *Bailey* the supreme court held that the trial judge should have granted a mistrial when the prosecutor said, in closing:

> The only thing that we've heard here today about which occurred in that room is from Doris Watson. She's the only person. These two ladies that were called, they weren't in that room.

In *Adams* v. *State*, 263 Ark. 536, 566 S.W.2d 387 (1978),

the court reversed for failure to grant a mistrial when the prosecutor said: "To convict him, you don't have to disbelieve any part of their case, because what did the defense, how many witnesses did the defense put on for your consideration?"

The statement made in the case at bar does not fit within the purview of the decisions in *Bailey* and *Adams.* In *Bailey* the court noted that the *Adams* court had distinguished remarks which seemed to refer to the defendant's failure to personally dispute the State's case from remarks relating to the failure of the defense to present any witness or evidence to dispute the State's case. In the case at bar the defendant suggested in closing to the jury that the athletic bag may have belonged to a family member. On rebuttal, the State rhetorically asked, in effect, why that family member had not come forward to testify. We do not think that the statement can be characterized as a veiled reference to the defendant's failure to testify.

Finally, appellant contends that the trial court erred in admitting evidence of prior convictions in which he contends there was "no finding of guilt," relying on *English* v. *State,* 274 Ark. 304, 626 S.W.2d 191 (1981). In *English* the court held that a "court probation" proceeding did not qualify as a previous conviction for purposes of the habitual offender act. Citing *Cantrell* v. *State,* 258 Ark. 833, 529 S.W.2d 136 (1975), the court described "court probation" as one in which there is "a formal refusal to accept [the defendant's] guilty plea." The evidence of the three prior offenses in issue here was a "Statement of the Court Respecting Statutory Probation" and docket sheets in each case showing the entry of a plea of nolo contendere. Each docket sheet indicated that the defendant was placed on five years statutory probation. There is no indication in any of the documents that the court refused to accept the defendant's plea, formally or otherwise. We conclude that Stevens' probation was not the type of court probation discussed in *English, supra. See Scroggins* v. *State,* 276 Ark. 177, 633 S.W.2d 33 (1982).

Affirmed.

COOPER and ROGERS, JJ., agree.