Minnie PRYOR *v.* STATE of Arkansas

CR 93-156                                               861 S.W.2d 544

Supreme Court of Arkansas
Opinion delivered September 20, 1993

*Rees Law Firm*, by: *Paul N. Ford*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal from two convictions for delivery of crack cocaine. The appellant, Minnie Pryor, was sentenced as a habitual offender and received 35 years and a fine of $25,000 for one conviction and 20 years on the second, with the time to serve to run consecutively. She raises several points on appeal, none of which has merit. We affirm.

On November 22, 1991, investigator Roger Mashburn of the Wynne Police Department met with an informant, Sammy White, for the purpose of setting up a drug buy from Minnie Pryor. White went to Pryor's home at 1201 West Poplar in Wynne, where he purchased six rocks of crack cocaine from the appellant for $50.00. On November 23, 1991, Investigator Neal Webster dropped the same Sammy White off at the appellant's house at the same location to make a buy. White purchased crack cocaine for $100.00. The appellant was arrested and charged with two counts of delivery of a controlled substance. Subsequently, an amended information was filed charging the appellant as a habitual offender.

At the trial of this matter Kim Brown, a chemist for the Arkansas State Crime Lab, testified that she had tested the substances that had been purchased from Pryor in November 1991 and that they tested positive for a cocaine base. She added that she received the substances in question from Wilbur English of the Cross County Sheriff's Department.

The State then moved to introduce State's Exhibit #2, a sealed envelope purporting to contain crack cocaine purchased from Pryor on November 22, 1991. The court received the evidence without objection from Pryor's counsel. The State then offered into evidence State's Exhibit #3, the purported controlled substance purchased from Pryor on November 23, 1991. After the defense responded that it had no objection to the introduction of this evidence, Exhibit #3 was also received.

Sammy White later testified that he had purchased the crack cocaine from the appellant on November 22, 1991, and November 23, 1991. The prosecutor asked this witness several questions which culminated in White's answer that his sister had been sold drugs by Pryor. Defense counsel objected and asked that the jury be admonished. The trial court admonished the jury not to consider White's response.

After White's testimony, the State rested and defense counsel asked to make several motions. In chambers, he moved to strike State's Exhibits 2 and 3 — the crack cocaine — on the basis that the State failed to prove that the chain of custody had been preserved. The trial court denied the motion.

Counsel also moved for a mistrial, citing the numerous questions the State asked White which led to his comment about Pryor's selling drugs to his sister. The State argued that the motion was untimely and contended that the defense had opened the door for these questions. The motion was denied.

Defense counsel then raised the issue of whether the appellant could be charged as a habitual offender. Of the appellant's two alleged convictions, according to the argument, one involved a *nolo contendere* plea for possession of a controlled substance. The trial court ruled that the *nolo contendere* plea counted as a prior conviction for purposes of the habitual offender statute and that the State could cross-examine the appellant regarding the two convictions.

Minnie Pryor testified in her case-in-chief and denied selling crack cocaine on November 22, 1991, and November 23, 1991. She introduced docket sheets as defense exhibits evidencing her *nolo contendere* plea to possession of a controlled substance and her guilty plea to forgery. She was cross-examined on both convictions.

The jury returned a verdict of guilty on the two November 1991 counts for delivery of crack cocaine.

During the penalty phase, the State argued that the jury should impose the maximum penalty stating that the Department of Corrections had a "place for her for as long as she is physically able to stay there." Defense counsel, in his closing argument, retorted that Pryor was age 42 and that in 60 years she would be 102. The prosecutor responded in his closing argument that if Pryor received a 60-year sentence, she would be out in 20 years. The defense objected to this argument and asked for an admonishment and mistrial. The State responded that the defense had opened the door for the response on time to be served. The court instructed the jury that it was not to consider the State's remarks about what period of time someone might serve as a result of

whatever penalty was assessed. The court then denied the motion to declare a mistrial.

The appellant was sentenced to a total of 55 years on the two counts and a fine of $25,000.00.

For her first point, Pryor contends that the trial court erred when it denied her motion to exclude the crack cocaine tested by the State Crime Lab because the State did not prove that the chain of custody had been preserved. Specifically, the appellant claims that there was no record of how the evidence was transported from the Cross County Sheriff's Department to the Crime Lab. The chemist from the Crime Lab did testify that the cocaine was delivered to her by Wilbur English, but Pryor argues that English should have testified to establish this. The appellant further contends that the evidence was tampered with because the informant, Sammy White, stated that he purchased more than three rocks of cocaine. However, when the exhibit was introduced into evidence, it only contained three rocks.

We agree that the purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with. *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992); *Neal* v. *State*, 298 Ark. 565, 769 S.W.2d 414 (1989). It is not necessary that the State eliminate every possibility of tampering; instead, the trial court must be satisfied that in all reasonable probability the evidence has not been tampered with. *Van Pelt* v. *State,* 306 Ark. 624, 816 S.W.2d 607 (1991); *Holbird* v. *State*, 301 Ark. 382, 784 S.W.2d 171 (1990). However, in order to raise the issue of untrustworthiness due to a break in the custody chain, an objection must be made at the time the evidence in question is offered. *Dixon* v. *State*, 310 Ark. 460, 839 S.W.2d 173 (1992). A chain of custody objection made after the evidence has been admitted is not timely. *Id*.

Here, the appellant did not object to the introduction of State's Exhibit #2 and specifically stated that there was "no objection" to the introduction of State's Exhibit #3. Instead, she waited to object to both exhibits until after the State had rested. This failure to act at first opportunity resulted in an objection that was untimely. The issue is not preserved for appeal.

Pryor's second asserted claim of error is that the trial court abused its discretion in not granting a mistrial after the prosecutor questioned Sammy White in a manner which suggested other drug involvement by the appellant. She argues that the prosecutor acted in bad faith in pursuing a line of questioning intended to elicit a response from White that Pryor sold drugs to his sister. The colloquy at trial was this:

PROSECUTOR: Let's go back. Why would Minnie buy - sell to you?

WHITE: Well, I had a sister that was on crack cocaine for a while and there was at least three drug dealers that would sell to her. Okay, and she was so bad that Mrs. Pryor she was taking clothes-

DEFENSE COUNSEL: Your Honor, I am going to object to this. I have talked to him and I know what he is going to do. He's going to tell this jury things that other people have told him and these are things that people have told him.

PROSECUTOR: Your, Honor, all I have asked him was why would she sell to him.

THE COURT: I think he can tell why he thinks she would sell to him. That is his opinion. On the other hand though, Mr. White, I don't want you telling what other people have told you. I want you to tell us what you know from your own observations.

WHITE: Your Honor, I know this for a fact.

THE COURT: Go ahead, Mr. Noblin.

PROSECUTOR: Go ahead.

WHITE: That she was selling drugs to my sister and she was taking stuff like clothes from the kids and toys for Christmas and stuff like this.

DEFENSE COUNSEL: Your Honor, I would like to have this matter proceed outside the presence of the jury.

THE COURT: Mr. Noblin, the objection is going to be sustained. We need to go on to something else.

DEFENSE COUNSEL: Your Honor, I would like for the jury to be told to disregard that.

THE COURT: The jury will be admonished that the last response, you are not to consider that. We are not here concerning that issue.

Later after the State had rested, defense counsel argued that he did not believe an admonishment cured the prejudice and moved for a mistrial, which was denied.

This motion, too, was not timely. Motions for mistrial must be made at the first opportunity. *Dixon* v. *State, supra; Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986). That was not done in this instance, and we need not address the issue.

For her next two points, Pryor argues that she was prejudiced by the trial court's failure to prohibit the State from questioning her about her past conviction for possession of a controlled substance and further by allowing consideration of this conviction for habitual offender purposes. She concedes that Ark. R. Evid. 609 states that prior convictions may be used for impeachment purposes under certain circumstances. However, she claims that her previous conviction for possession was in fact a no contest plea where no finding of guilt occurred and was, thus, inappropriate for impeachment. Moreover, she had admitted to her criminal record on direct examination.

We disagree with Pryor's argument. This court has consistently treated convictions based on *nolo contendere* pleas as convictions. *See, e.g., Jenkins* v. *State*, 301 Ark. 586, 786 S.W.2d 566 (1990); *Barnes* v. *State*, 294 Ark. 369, 742 S.W.2d 925 (1988); *Snelgrove* v. *State*, 292 Ark. 116, 728 S.W.2d 497 (1987). As such, these pleas readily fall within the confines of Rule 609 and the Habitual Offender Statute. Indeed, the Arkansas Court of Appeals recently counted three *nolo contendere* pleas as convictions for habitual offender purposes. *See Stevens* v. *State*, 38 Ark. App. 209, 832 S.W.2d 275 (1992).

The question then becomes whether use of the *nolo contendere* plea for impeachment was unduly prejudicial under Rule 609. We do not believe it was. This conviction was already before the jury by virtue of Pryor's direct testimony. Pryor then denied the charges against her for drug dealing on cross examina-

tion. Surely, a prior conviction for drug possession irrespective of no specific finding of guilt was probative of Pryor's credibility. We conclude that there was no abuse of discretion by the trial court in its ruling.

We turn to Pryor's final point which is that the prosecutor irrevocably tainted the trial by reference to specific parole possibilities. We reiterate the statements at issue:

> DEFENSE ATTORNEY IN CLOSING ARGU-MENT: I'm going to stick up for the minimum punishment to be imposed. Minnie Pryor told you she was 42 years old. In 20 years she will be 62 years old. Sixty years from now she'll be 102 years old.
>
> . . . .
>
> PROSECUTOR IN CLOSING ARGUMENT: Now he came up here and argued that if she gets 60 years she'll be 102. If she gets 60 years and stays clean, she'll be back in 20. Let's not play any games about it. You give her 20 years, she'll be back in 5 to 10.

The trial court sustained an objection to the prosecutor's remarks and defense counsel then stated: "Your honor, I would ask that the jury be told to disregard those remarks and I ask for a mistrial." The court then instructed the jurors not to consider the prosecutor's comment on time to be served and denied the request for a mistrial.

There is no question but that comments on parole by the State are to be avoided, and we have so stated. *See, e.g., Simmons v. State*, 278 Ark. 305, 645 S.W.2d 680 (1983). Nevertheless, in the case before us defense counsel precipitated the comment by arguing to the jury, in effect, that Pryor would be required to serve the full term of years and that if sentenced to 60 years, she would serve 60 years. This statement was misleading.

Defense counsel misinformed the jury and opened the door and invited a response to his absolute statement that Pryor would be in prison for all of the time assessed. *Nelson v. State*, 306 Ark. 456, 816 S.W.2d 159 (1991). We note, too, that the defense counsel asked for an admonishment and that the jury was instructed not to consider the remarks of the prosecutor. Under

these circumstances, we cannot say that the trial court erred in refusing to declare a mistrial.

Affirmed.